UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                Plaintiff,            Criminal No. 22-20003

v.

                                   Honorable Laurie J. Michelson

D-1 Fredric Haynes,

                Defendant.

Government's Response in Opposition to Defendant's Motion to Revoke
the Order of Detention (ECF No. 37)

## Introduction

Fredric Haynes is a California resident who was convicted in 2013 for traveling to Michigan to oversee the distribution of a kilogram of cocaine. After he was released from prison in 2019, he promptly resumed the same criminal activity on a larger scale. Haynes frequently traveled to Michigan to oversee the distribution of kilograms of drugs including fentanyl, and along with his co-defendant Jeremy Joshua, used multiple, compartmentalized locations to store and process the drugs. Over the course of a year, agents seized almost 18 kilograms of drugs, and half a million dollars that represented a fraction of Haynes's operation.

After detailed consideration of the factors of 18 U.S.C. § 3142(g), a magistrate judge in the Eastern District of California detained Haynes because no conditions could reasonably ensure the safety of the community or Haynes's

appearance if he were released. The Court's order should be continued.

## Procedural History

On December 20, 2021, DEA agents arrested Haynes in California as agents in Detroit executed search warrants at three locations associated with Haynes's drug trafficking. On December 21, 2021, Haynes was charged via a complaint with conspiracy to possess with intent to distribute controlled substances and appeared in court in the Eastern District of California. (ECF No. 1). Following a detention hearing, the magistrate judge ordered Haynes detained on December 29, 2022. (EDCA 21-mj-00140 ECF No. 7). On January 4, 2022, a grand jury returned an indictment against Haynes charging him with conspiracy to possess with intent to distribute and to distribute controlled substances and two counts of possession with intent to distribute controlled substances. (ECF No. 11). On March 2, 2022, Haynes initially appeared in this District. On August 26, 2022, Haynes filed the instant motion to revoke the detention order, which this Court should deny. (ECF No. 37).

## Facts

Haynes conspired with Joshua to distribute kilograms of drugs, including fentanyl in the Eastern District of Michigan. Since at least November 2020, Haynes traveled from California to Michigan almost monthly to oversee drug shipments when they arrived or to collect proceeds. Haynes and Joshua used multiple properties to store and process the kilograms they distributed.

Their operation was sophisticated. They delivered drug proceeds to individuals to launder back to Mexican sources of supply. On two occasions Joshua unknowingly delivered cash to an undercover officer. Joshua first delivered approximately $50,000 in March 2020 and then approximately $115,000 in April 2020. Haynes, who identified himself as "Cali," coordinated Joshua's April delivery with the undercover officer and told him about the delivery of drug proceeds "this is what we do" when the undercover expressed concern they not short him on the cash.

DEA agents seized Haynes and Joshua's drugs on just two occasions, first in December 2020 after a traffic stop and then in December 2021 when they executed multiple search warrants in Michigan.

On December 10, 2020, agents saw Haynes and Joshua drop off two cars to a car hauler in a mall parking lot. Surrounding each drop off they went to a condo in Sterling Heights, which was one of the locations agents searched in 2021 and determined Haynes and Joshua used to store drugs. When agents stopped the hauler and searched the cars, they found both were outfitted with traps; one hiding 990 grams of fentanyl and $140,020, the other hiding $158,970, totaling almost $300,000 in drug proceeds. Haynes had been a consistent customer for the hauler, using a variety of loosely associated aliases to regularly transport vehicles between California and Michigan.

 

After a year of continued investigation, agents executed search warrants on Monday, December 20, 2021, at three locations where Haynes spent time while in Michigan for the weekend. Agents searched the condo they saw Haynes and Joshua go to before delivering the two cars with drugs and money the year before. When agents searched the condo, they found as many as 11 kilograms of fentanyl stored in a duffle bag in a closet.



Agents also searched a residence in Detroit that Joshua owned and was renovating. Haynes and Joshua used this location to process drugs, breaking them down and adding dilutants before pressing and repacking the kilograms. Haynes and Joshua spent almost seven hours there the Friday night before agents executed the search warrants Monday morning. While Haynes was there, he was intercepted telling someone he was "working" and "checking on his traps." When they searched the house, agents seized almost five kilograms of drugs, including almost a full kilogram of fentanyl in a press hidden in the floor. And during the investigation agents intercepted Haynes and Joshua discussing purchasing safes to install in floors.






Agents also seized an AR-15 rifle from a closet, likely to protect all the drugs Haynes and Joshua were processing.



Agents searched Joshua's Harper Woods apartment where Haynes frequently stayed while in Michigan. Agents seized more than $47,000 stacked and rubber banded in a drawer in a spare bedroom with a pill bottle prescribed to Haynes. This is the same room Haynes boastfully posed with banded bulk currency on September 11, 2020.



In California, when agents arrested Haynes, he had $4,700 on him and $10,000 in the middle console of his car. When they searched Haynes's residence

that he shared with his fiancé, they found $124,500 (of which over $3,000 was stored in a book with a hidden compartment) and firearms; including a "ghost gun" that was untraceable, and a rifle. Haynes as a felon, cannot possess or have access to any firearm.

 

These seizures on just two occasions were merely representative of Haynes's long-term drug trafficking. Agents intercepted Haynes and Joshua arranging drug sales even though they were not able to make a seizure each time. For example, on one occasion Joshua was intercepted meeting with a drug customer in Detroit at Haynes's direction while he was in California. Following the meeting Joshua confirmed the amount of money he collected was supposed to be "54," as in $54,0000, likely the cost of a kilogram. There were multiple occasions when

Haynes and Joshua discussed having large amounts of money on hand, including Joshua's description of "tucking" cash until Haynes arrived in Michigan.

## Argument

This Court should uphold the magistrate judge's order to detain Haynes. The Court reviews a magistrate judge's order of detention de novo. *United States v. Montgomery*, No. 09-20101, 2010 WL 1052339 (E.D. Mich. Mar. 19, 2010) (Cox, J.); *United States v. Koubriti*, No. 01-80778, 2001 WL 1525270, at *5 (E.D. Mich. Oct. 16, 2001) (Rosen, J.) (noting that although the Sixth Circuit has not addressed the appropriate standard of review, district courts within the Sixth Circuit and sister circuits apply a standard of de novo review).

The government must show by a preponderance of the evidence that Haynes is a flight risk, and by clear and convincing evidence that he is a danger to the community. Haynes is both.

## Presumption of Detention

When a judicial officer finds probable cause that a defendant committed a listed crime under 18 U.S.C. §3142(e)(3) there is a presumption in favor of detention. A grand jury indictment is sufficient to establish probable cause under § 3142(e)(3) that a defendant has committed these types of offenses. *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). Given the amount of drugs seized in this case, the decision regarding detention should start with the presumption that Haynes should be detained. The presumption "reflects Congress's substantive

judgment that particular classes of offenders should ordinarily be detained," even if a defendant satisfies his burden of production. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) quoting *United States v. Mercedes*, 254 F.3d 433 (2d Cir. 2001). This is so because "the presumption of dangerousness . . . represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." *Stone*, 608 F.3d at 946 quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

Haynes is the type of offender Congress presumed should be detained because he is less likely to be deterred despite pending charges or bond conditions. Even if this Court were to find that Haynes rebutted the presumption, the government has met its burden of persuasion as to both standards.

## 18 U.S.C. § 3142(g) Factors

The Court is to consider the following factors when determining if the government has met its burden of persuasion:

## Nature and Circumstances of the Offense: 18 U.S.C. § 3142(g)(1)

In weighing this factor, the Court is to consider whether the offense involves a controlled substance. Here, DEA seized nearly 18 kilograms of drugs on just two occasions, but that inevitably represented a fraction of Haynes's criminal activity.

Haynes led a long term, large-scale, and sophisticated drug trafficking and money laundering conspiracy that dates back to at least March of 2020 when

9

Joshua first delivered drug proceeds to be laundered. Interceptions showed that Joshua acted at Haynes's direction. But based on Haynes's assertion "this is what we do," about the delivery of cash, the Court can reasonably infer Haynes was overseeing significant shipments of drugs to generate those proceeds well before the March 2020 delivery. And the April and March 2020 deliveries of bulk cash in the same Home Depot parking lot are not isolated events. As recently as November 2021, while on their way to the airport so Haynes could return to California, he and Joshua detoured to the same Home Depot where Joshua met the undercover officer, only to stop briefly in the parking lot before continuing on. While officers did not see who they met with to stop the individual, the Court can likewise infer they delivered proceeds to again be laundered to a source of supply.

Haynes used multiple, compartmentalized locations to facilitate his illegal activity. He used the condo in Sterling Heights to store kilograms. The condo was an otherwise unoccupied, discrete stash location in the suburbs. The utilities were established in a fake name in September 2020 by an individual who went to great lengths to try to disguise their identity. No one visited the condo regularly, but when Haynes did it was for brief periods for an illegal purpose. And Haynes and Joshua then processed the drugs at Joshua's home he was renovating, all separate from Joshua's apartment where he lived, and Haynes stayed during his regular visits.

## Weight of the Evidence: 18 U.S.C. § 3142(g)(2)

"Section 3142(g)(2) considers weight of the evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948. The Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run of the mill drug dealers, even without any indication that the defendant is engaged in violence…To be sure, drug trafficking is a serious offense that, in itself poses a danger to the community." *Id.* at 955. Haynes is not a run of the mill drug dealer. The type of drugs and quantity alone are indicative of the danger Haynes poses.

Fentanyl is inherently more dangerous than other drugs. According to the CDC it is 50 times more dangerous than heroin. See https://www.cdc.gov/stopoverdose/fentanyl/index.html. Fentanyl not only poses a greater danger to users who can more easily overdose from the drug, but also to law enforcement who have to take extra precaution when seizing drugs that may contain fentanyl. See https://www.cdc.gov/niosh/topics/fentanyl/risk.html. When agents executed the search warrants at the three locations, they used two drug detection dogs. Both dogs exhibited signs of exposure to fentanyl and had to be rushed to a veterinary office.

Despite being a convicted felon prohibited from possessing a firearm, Haynes had two firearms at his home, including an untraceable ghost gun and a box with 100 shotgun shells. Agents also seized an assault rifle in the same house he and Joshua used to process drugs for distribution, which only heightens the

danger Haynes poses to the community. Haynes's possession, or at a minimum access to multiple firearms, is further evidence of his blatant disregard for the law.

### History and Characteristics of the Person: 18 U.S.C. § 3142(g)(3)

Haynes's criminal history is significant. The magistrate judge made no mistake describing it as such. (ECF No. 37, PageID.160). Haynes has convictions in at least three states, but Haynes only disclosed his Michigan drug trafficking conviction. (ECF No. 37-1). Haynes was convicted in California in 2006 for a hit and run and drug possession. He was convicted in Nevada in 2009 for trafficking cocaine. And in 2013, he was convicted of trafficking a kilogram of cocaine. In that case, Haynes admitted he paid his relative $1,000 to transport the kilogram from California while Haynes flew to Michigan to sell the kilogram for $40,000 and that he also sold five pounds of marijuana for $20,000[1]. Haynes was sentenced to 5-20 years in prison. He was discharged from parole in 2019. But rather than reform his ways, he almost immediately returned to trafficking drugs, but on a much larger scale.

Nor was Haynes deterred when his drugs were seized. Following the December 2020 seizure, Haynes was just more cautious. He still regularly flew to Michigan to oversee his operation. And when he was here, Haynes and Joshua were extremely surveillance conscious. They employed some of the more

---

[1] Report available upon request.

extensive counter-surveillance methods agents observed, consistently changing routes, traveling in different directions, and checking for law enforcement, making it hard to follow them. At one point in the Spring of 2021, agents believed they were compromised during surveillance, but that still did not stop Haynes.

Other than the fact that Haynes has a long history of distributing drugs in Michigan dating back to his 2013 conviction, he has no identifiable ties to the district. His management of sober homes in California and desire to protect his community (ECF No. 37, PageID.159) is paradoxical considering he devoted a significant amount of time to trafficking drugs and traveled monthly to Michigan to oversee the distribution of highly dangerous and potent drugs, which ultimately were intended for people who struggled with their sobriety.

As for Haynes's relatively new trucking business, he owns it with another individual with a felony record and who was intercepted talking to Haynes about obtaining a firearm for one of Haynes's relatives that did not "have bodies on it." Furthermore, at least one of those trucks was identified in Michigan, which while not confirmed, Haynes could have used to transport drugs.

Haynes also has access to substantial assets, between his *reported* $2,500 monthly income, $11,000 in bank accounts, $10,000 in stocks, his sellable assets, and his family's ability to post $20,000 cash for bond. He was also intercepted talking about using Bitcoin, a sophisticated way to hide drug proceeds, and he and Joshua discussed using some of his proceeds to purchase high-end jewelry to avoid

13

having so much cash on hand, including a watch to store in a safety deposit box (which DEA never found and could still be sold). Haynes was also intercepted arranging to purchase additional real estate in California that he did not disclose to Pretrial Services. All of this makes Haynes a greater flight risk.

### No Conditions of Bond Can Be Set to Address the Concerns of the Safety of the Community or Potential Risk of Flight

Short of detention the most restrictive bond conditions the Court could impose would include a GPS tether and home incarceration, but neither would ensure the safety of the community or Haynes's appearance. Haynes's fiancé, the same person who had multiple guns in her home despite living with a convicted felon, is not an appropriate third-party custodian. But a third-party custodian, regardless of who it is, is not sufficient to address the danger or flight risk Haynes poses. Even though Haynes regularly traveled to Michigan to oversee operations, he often directed them from California, including coordinating a delivery of proceeds to be laundered to Mexico and the distribution of drugs to customers. And Haynes used multiple phones, none in his name, changing them often, and sometimes even established a phone just for a specific transaction. All this indicates even home incarceration and location monitoring would not hinder Haynes's efforts and strongly suggests Haynes would not comply with conditions if released on bond, but would instead attempt to find ways to skirt them.

14

## Conclusion

For all of the above stated reasons Defendant's motion should be denied.

Respectfully Submitted,

Dawn N. Ison
United States Attorney

s/ *Andrea Hutting*
Andrea Hutting
Assistant United States Attorney
211 W. Fort St. Suite 2001
Detroit, MI 48226
313-226-9110 phone
andrea.hutting@usdoj.gov

Dated: September 6, 2022

CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2022, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system which

will send notification of such filing to the following:

Michael Norman

s/ *Andrea Hutting*
Andrea Hutting
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
313-226-9110 phone
andrea.hutting@usdoj.gov